IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



**JEFFREY HENDRICKS,**

        **Plaintiff,**

v.                                                CIVIL ACTION NO. 2:20-cv-244

**MATTHEW T. RIOS, Individually and
in his official capacity as Police Officer for
the City of Portsmouth, Virginia,**

and

**ANTHONY J. CALLAHAN, JR.,**
**Individually and in his official capacity as**
**Police Officer for the City of Portsmouth, Virginia,**

        **Defendants.**

### *MEMORANDUM OPINION AND ORDER*

Before the Court is Defendant Anthony J. Callahan, Jr.'s ("Defendant Callahan") Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). ECF No. 6. Having been fully briefed, this matter is ripe for judicial determination.

### I.    FACTUAL AND PROCEDURAL HISTORY

The following facts taken from Jeffrey Henricks' ("Plaintiff") Complaint are considered true and cast in the light most favorable to Plaintiff. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

On July 22, 2018, Plaintiff went to the home of his bedridden mother, Dorothy Hendricks, ("Ms. Hendricks") in Portsmouth, Virginia. ECF No. 1 at ¶ 12. Upon his arrival, Plaintiff engaged in a conversation with his niece and ex-sister in law regarding his deceased uncle's personal property. *Id.* at ¶ 13. Officer Rios approached and asked Plaintiff for the keys to the personal

property.[1] *Id.* at ¶¶ 14–15. Plaintiff informed Officer Rios that he did not have the keys to the personal property. *Id.* at ¶ 15. After Officer Rios asked Plaintiff for the keys to the personal property a second time, Plaintiff again told Officer Rios that he did not have the keys to the personal property but led Officer Rios into Ms. Hendricks' home so that she could help locate the keys. *Id.* at ¶¶ 16–18.

Upon entering his mother's bedroom, Officer Rios aggressively grabbed Plaintiff's right hand. *Id.* at ¶ 19. As Plaintiff pulled away and turned towards Officer Rios, Plaintiff tripped and fell into his mother's bedroom. *Id.* at ¶ 20. Officer Rios "immediately pounced onto [Plaintiff's] back, grabbed his shoulder and kneed him in his neck and spine." *Id.* at ¶ 21. Officer Rios then grabbed Plaintiff's "arms and attempted to repeat knee him again." *Id.* at ¶ 22. In self-defense, Plaintiff turned away causing Officer Rios to "shift" over his shoulder. *Id.* Officer Rios grabbed and punched Plaintiff repeatedly as Plaintiff rolled on the floor attempting to avoid blows. *Id.* at ¶ 23. After losing his breath, Officer Rios sat down on Ms. Hendricks' legs and threatened to spray Plaintiff. *Id.* at ¶¶ 24–25.

Officer Callahan then came into the bedroom and handcuffed Plaintiff. *Id.* at ¶ 26. Officer Rios and Officer Callahan arrested Plaintiff and transported him to Portsmouth City Jail where he was detained from July 22, 2018 until July 24, 2018. *Id.* at ¶ 27. Officer Rios and Officer Callahan then filed charges of felony assault and battery of a police officer as well as misdemeanor assault and battery of Ms. Hendricks. *Id.* at ¶ 28. Officer Rios and Officer Callahan provided false statements to the Portsmouth General District Court Magistrate alleging that Mr. Hendricks assaulted Officer Rios and Ms. Hendricks in support of the charges against Plaintiff. *Id.* at ¶ 29.

---

[1] The Complaint is unclear as to why Officer Rios was at the property.

Officer Rios and Officer Callahan also provided false statements to the Assistant Commonwealth's Attorney ("ACA") alleging that Plaintiff assaulted Officer Rios and Ms. Hendricks. *Id.* at ¶ 30.

On August 27, 2018, based on evidence that Plaintiff had never assaulted Officer Rios, or his mother, the ACA terminated charges against Plaintiff *nolle prosequi*. *Id.* at ¶ 31. Portsmouth Chief of Police later informed Plaintiff that Officer Rios would be subjected to disciplinary action for violating departmental rules, regulations, and/or standards of conduct. *Id.* at ¶ 32. Plaintiff suffered permanent disability from the physical battery and use of excessive force by Officer Rios, as well as severe emotional distress from the assault and battery, malicious prosecution, and defamation caused by Officer Rios and Officer Callahan. *Id.* at ¶¶ 34–35.

On May 13, 2020, Plaintiff filed a complaint against Officer Rios and Officer Callahan. ECF No. 1. Specifically, Plaintiff brought malicious prosecution claims against Officers Rios and Callahan, and excessive force and assault and battery claims against Officer Rios. *Id.* at 6–11. Defendant Rios filed an Answer to the Complaint. ECF No. 8. On June 5, 2020, Defendant Callahan filed a motion to dismiss for failure to state a claim. ECF Nos. 6–7. Plaintiff opposed the motion on June 13, 2020. ECF No. 10. Defendant Callahan did not file a reply.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. The United States Supreme Court has stated that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Specifically, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

Moreover, at the motion to dismiss stage, the court is bound to accept all of the factual allegations in the complaint as true. *Id.* However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Assessing the claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.)).

### III. DISCUSSION

Plaintiff raises a single claim against Defendant Callahan for malicious prosecution.[2] ECF No. 1. Defendant contends that Plaintiff's claim for malicious prosecution should be dismissed because Plaintiff failed to state facts that would defeat Defendant Callahan's entitlement to qualified immunity. ECF No. 7 at 4. Specifically, Defendant Callahan argues that Plaintiff failed to demonstrate that the legal process instituted against him – the arrest – was without probable cause. *Id.* at 4–5. In deciding this motion to dismiss, the Court will first examine whether Plaintiff sufficiently pleaded facts for malicious prosecution and then examine qualified immunity.

#### a. *Malicious Prosecution*

A claim for malicious prosecution is founded on a Fourth Amendment claim for unreasonable seizure that incorporates certain elements of the common law tort of malicious prosecution. *Smith v. Munday*, 848 F.3d 248, 252 (4th Cir. 2017). To bring a § 1983 malicious prosecution claim, a plaintiff must allege facts that show: (1) the defendant seized the plaintiff pursuant to legal process that was not supported by probable cause; and (2) the criminal proceedings terminated in the plaintiff's favor. *Id.* at 253. As to the first element, "[a]n officer has probable cause "when the facts and circumstances within the officer's knowledge. . . are sufficient

---

[2] Defendant Callahan argues that Plaintiff fails to state a claim for excessive force. However, Plaintiff did not bring a claim for excessive force against Defendant Callahan. *See* ECF No. 1. Therefore, the Court need not address this claim.

to warrant a prudent person, or one of reasonable caution, [into believing] that the suspect has committed, is committing, or is about to commit an offense." *Burrell v. Virginia*, 395 F.3d 508, 514 (4th Cir. 2005) (citation omitted). Probable cause is an objective standard determined by the totality-of-the circumstances. *Illinois v. Gates*, 462 U.S. 213, 230 (1983). In cases where a plaintiff alleges that an officer provided false statements in support of probable cause, the court must examine whether the false statements were "material" and whether the statements were made "deliberately or with a reckless disregard for the truth." *Massey v. Ojaniit*, 759 F.3d 343, 357 (4th Cir. 2014) (citations omitted).

Here, Plaintiff has sufficiently pleaded both elements for a malicious prosecution claim. In bringing a malicious prosecution claim against Defendant Callahan, Plaintiff makes clear that he is not complaining of Defendant Callahan's arrest of him on the scene of the incident, but of the false statements that Defendant Callahan provided to the Portsmouth Magistrate in support of the assault and battery charges against him. *See* ECF No. 10 at 3. Plaintiff contends that Defendant Callahan made false statements to the Portsmouth Magistrate and to the ACA in support of assault and battery charges against Plaintiff. ECF No. 1 at ¶¶ 28–30. According to the Complaint, Defendant Callahan made these false statements even though Defendant Callahan did not specifically witness the assault. ECF No. 1 at ¶¶ 21–26 (noting that Defendant Callahan entered the room when Officer Rios was sitting on the bed and Plaintiff was on the floor). There was also evidence indicating that Plaintiff did not commit assault and battery on Officer Rios or Ms. Hendricks. *Id.* at ¶42 (noting that "[b]y all witness accounts, as well as the recordings from the body camera of Officer Rios and Officer Callahan, Officer Rios initiated the physical assault and battery of [Plaintiff]"). The Complaint also alleges that, based on information and belief, Defendant Callahan purposely falsified information and important and material facts regarding the

5

incident, and acted recklessly in pursuing charges against Plaintiff. *Id.* at ¶¶ 43, 45. Defendant Callahan's false statements were material as it led to charges being brought against Plaintiff for assault and battery. *Id.* at ¶¶ 39–41. Thus, based on the facts, the Complaint sufficiently alleges that no probable cause existed for the charges brought against Plaintiff. Further, the Complaint states that the proceedings terminated *nolle prosequi*, and therefore terminated in Plaintiff's favor. *Id.* at ¶¶ 31,47. Thus, Plaintiff has sufficiently pleaded facts establishing a claim for malicious prosecution.

### b. Qualified Immunity

In stating a claim for malicious prosecution under 42 U.S.C. § 1983, a plaintiff must also state facts to overcome a claim of qualified immunity. The doctrine of qualified immunity "protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). The doctrine "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." *Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." *E.W. ex rel. T.W. v. Dolgos*, 884 F.3d 172, 178 (4th Cir. 2018) (citation and internal quotation marks omitted). Where an officer has provided misleading information to a magistrate or a prosecuting attorney, that officer will seldom be protected by qualified immunity. *See Hupp v. Cook*, 931 F.3d 307, 324 (4th Cir. 2019) (noting that an officer who provides misleading information to secure a probable-cause determination can hardly be called reasonable and will not be provided the shield of qualified

6

immunity); *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) (indicating that an officer may be liable for malicious prosecution when they lie or mislead a prosecutor, fail to disclose exculpatory evidence to a prosecutor, or unduly pressure a prosecutor to seek the indictment).

Here, Plaintiff has sufficiently pleaded facts indicating a constitutional violation. Plaintiff alleges a claim for malicious prosecution against Defendant Callahan. ECF No. 1 at 6–9. A malicious prosecution claim is properly understood as a claim for unreasonable seizure under the Fourth Amendment. *See Miller v. Prince George's Cty., MD,* 475 F.3d 621, 627 (4th Cir. 2007) ("[t]he Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable.") (citation omitted). As discussed above, Plaintiff has stated a plausible claim for malicious prosecution, and therefore satisfies the first prong of the qualified immunity analysis.

As to the second prong, Plaintiff's Complaint also alleges facts stating that Defendant Callahan violated a clearly established rule. It has long been established that an officer who deliberately makes materially false statements or omits material facts in order to obtain a warrant violates the Fourth Amendment. *See Miller*, 475 F.3d at 630 (citing cases). At the time Officer Callahan made the false statements to the magistrate and the ACA, the law was clearly established that the Constitution did not permit a police officer to make false statements to pursue charges that would otherwise not be supported by probable cause. And no reasonable police officer would believe that the Fourth Amendment permitted such conduct. *See Smith v. Reddy*, 101 F.3d 351, 355 (4th Cir. 1996) ("a reasonable officer cannot believe a warrant is supported by probable cause if the magistrate is misled by statements that the officer knows or should know are false"). Thus, based on the facts and allegations in the Complaint, Plaintiff has sufficiently pleaded facts to defeat Defendant Callahan's entitlement to qualified immunity.

## IV. CONCLUSION

Based on the foregoing reasons, Defendant Callahan's Motion to Dismiss is **DENIED**.

The Court **DIRECTS** the Clerk to provide a copy of this Order to the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
August 26, 2020

/s/
Raymond A. Jackson
United States District Judge